Next we will hear argument in Appeal 2008-1001 Jacobsen v. Katzer Ms. Hall, good morning to you. Good morning Judge Mischel, Judge Halbert, Judge Prost. My name is Victoria Hall and I represent Plaintiff Appellant Robert Jacobsen. We are here on appeal from a denial of a preliminary injunction. This injunction sought to enjoin Matthew Katzer and Camden Associates from infringing Jacobsen's copyright. The District Court denied the injunction. Isn't the critical issue here what a one-page document means, the so-called artistic license? That is one of the issues. The other issue is whether a contract even exists. Well, let's concentrate on the document first so I can follow what's going on here. Do you consider this so-called artistic license, this one-page document, to be a license or an offer to license or a conditional license or a license with side covenants or a contract or what? What animal is this? It could be viewed from two, there are two theories behind it. It is either an offer for which performance is invited to accept the contract, in other words a unilateral contract. It can also be looked at as a bare license, essentially like a signpost on a park that says this is what you're permitted to do. And in order for someone who uses the software to say they have a license to create derivative works or to distribute, they essentially have to point to the document and say, oh, I was doing paragraph 3 and I put the prominent notice and I complied with number B. Under a unilateral contract theory, they have to tender their performance by putting in, in particular when making derivative works, they put in the prominent notice stating when and how they changed each of the files that they changed. And they also did one of four things related to distribution. They either made their work publicly available. And they would need to do these things. Yes. But in the facts of this case, they didn't do any of those things. That's correct. That's the source of your complaint, that they didn't meet the conditions or didn't carry out the duties or however we want to label it. They didn't accept through performance, which raises the question, do they have a license at all? And if they don't have a license. So your position is just that it's the difference between a condition and a covenant. If we were to conclude it was a condition, then it would be under the copyright law. But if it was a covenant under a contract, then it would be enforceable as a breach of contract, right? That's true if we're looking at a bilateral contract. Now, if we're looking at a unilateral contract, the duty of Mr. Jacobson to grant a license does not vest until they have accepted fully through performance. And that means putting in the prominent notice and doing one of four things. Within the document that I focused your attention on is not a license. It's an offer to license that gets activated or accepted by putting in the required notices. Putting in the required notices and doing the distribution as required. Or is it accepted by downloading? In other words, is it an offer that's accepted when you download? Not necessarily. And there is some case law about downloading versus clicking a button that says I agree to all these terms. That's a case called spec versus Netscape, which we have not cited here in the brief. What could be construed as a license from making available and making it downloadable by clicking a download link would be only granting an implied license to make a verbatim copy from the web server onto a local hard drive. And that is in accordance with the Ninth Circuit's policy that licenses should be construed narrowly. And they should be analyzed to determine what the license affirmatively grants because copyright licenses are assumed to prohibit those uses not authorized. Here, a download does not say, oh, you may make modifications and distribute all you like. You may only make that. Let's get to the issue of the importance to the copyright holder of the things listed in those subparagraphs, most of which were not even discussed by the district court in this case. Once it found a virtually unlimited license, it didn't go on. How would you describe the importance of the subparagraphs listed in your license? Yes. The open source development model uses and requires an open source group, an open source group's copyrighted software, and an open source license. And the engine that drives the open source development model is posting the software, permitting others to download, make changes, additions, corrections, suggestions. And if they distribute it further, they must also return it to the open source developers or otherwise make it publicly available so that those changes, additions, suggestions can be incorporated and put out again. This drives an open source development model through this development and distribution that gives it advantages over the proprietary software model. And it is one that is driving a multi-billion dollar industry with major players such as Linux, Red Hat, Sun Microsystems. Microsoft has even sought to get its own open source license approved. It is critical, and that's the reason why these terms, if they are not… But what's the practical point? That somebody can't later copyright a related work, a modification, or what? I'm sorry, I don't understand. I'm trying to understand what is it that the grantor of a license in this kind of circumstance is trying to prevent by having conditions or covenants or whatever they are stated in the license. He is preventing the work from being taken from the open source commons, as it were, into a private work and having it, with whatever changes that have been made, remain private. Those changes, this is part of the open source work. When you say remain private, I'm not sure what you mean. That if you create the work and I take a license and then I change it, that you're trying to make sure that I don't copyright the changed version of your product? No, that's not what we're saying. What we're saying is that certainly it can be copyrighted, but a license must be granted back to the open source developer so that those changes may be incorporated in the open source software and then further propagated, allowing others to download that new version, make additions, changes, deletions, suggestions. So then the licensor is not trying to prevent downstream players from doing anything. The licensor is just trying to make sure that he or she gets back the modified product? If they distribute it privately, yes. The importance of what you're trying to accomplish with this open source doctrine, to have full transparency in any changes that are made as it proceeds downstream so that all get the benefit. They can see that if their change is made, they're renamed so that the original is then also clear that there was an original change that has been made and the fully transparent proliferation of changes is available for all to benefit from. Is that the importance that you're trying to claim? Yes, that is. So then what you're doing is blocking trade secrets by the downstream redeveloper. We are saying that if they want to have permission to use open source software and incorporate it in their own privately developed commercial software, that in order to have permission to use the underlying copyright, they must return their changes to the open source developers or make them publicly available. That is the critical part of the open source doctrine. So they can't make it through trade secret or other device a private secret adaptation of the original software. They have to make it public. For this particular license, yes, that's true. There are some licenses such as academic licenses which do not. Don't confuse us with variants. We're having a hard enough time understanding this, at least I am. Are there any monetary damages at stake? The monetary damages that would be available would be those available through copyright. It seems that the damages that would be available through contract would be so speculative that we wouldn't be awarded any damages. And that is an important part of why these terms, if they are not restrictions on the scope, they should be considered conditions precedent so that a license is not granted until these terms have been met. If we were to agree with your proposition with respect to preliminary injunction, did you ever get to the point of trying to convince the district judge about irreparable harm? Or was any testimony done or any other factual referrals made about irreparable harm in this case? Irreparable harm was presumed. We did have some information relating to that because what Mr. Katzer had said was, well, there is no irreparable harm because money damages will be available. But then he turned around and said in another place, which I pointed out in my brief, that money damages were not available. And so the way that we've seen is that money damages, except through copyright, and there is some question because the work was not registered prior to infringement. We may even have a difficulty getting actual damages in terms of being able to prove them. In fact, the only remedy that may be available is injunctive relief. I didn't understand your answer to Judge Hutchford's question when you said we had some information. Did you present some evidence to Judge White in the preliminary injunction proceeding dealing with irreparable harm? We used their representations. We also used the fact that we had not registered this work, and so therefore damages may be difficult to prove, may not even be available. So he had all that you wanted to present dealing with irreparable harm. He simply didn't adjudicate the question of irreparable harm. Irreparable harm is still considered. Help me out. Just yes or no. He had all the evidence you wanted him to have dealing with irreparable harm. Yes. But then he never decided irreparable harm. No, and I think that's because irreparable harm is still presumed in intellectual property cases in the Ninth Circuit. Well, you're saying that we should construe this as a condition to the license, and therefore it would come under copyright infringement, and therefore you'd be entitled to a presumption of irreparable harm. Yes. And was that the operating assumption that guided this litigation when it was at the district court level as well about irreparable harm? In other words, the parties were basically disputing whether or not this was a condition or a covenant. That is part of it. And then, of course, we have our own dispute that they even have a license whatsoever because they haven't accepted your performance. Okay. Let's assume that we agree at least in part with what you're saying or at least think this comes under the rubric of copyright infringement. Yes, Your Honor. What are you asking for us here to just remand? I mean, there hasn't been a final analysis by the district court on all the factors for a preliminary injunction and so forth. I mean, I don't know whether there has or not. So you're not asking us to reverse and enter a preliminary injunction, right? You're just seeking a remand for us to send it back to the district court telling him you're right on the covenant stuff, and now you adjudicate whether or not there's a need for a preliminary injunction. Either vacate or remand or reverse and remand would be appropriate in this case. What I think would be the most helpful would be to get a rule that— We're not here to help. We're here to do what's right. Yes, yes. I understand. Now, Ms. Hall, you're saying you'd be satisfied with the remand. But the final page of your brief distinctly says something different. The final sentence says, for the foregoing reasons, Jacobson respectfully requests this court to reverse the judgment of the district court and grant the preliminary injunction, asking us to grant the preliminary injunction. Now, are you abandoning that and saying now that you'd be satisfied with a vacate and remand, or are you still insisting that we grant you a preliminary injunction? I think it would be appropriate to reverse and remand, but you three may disagree with me on that point. The law in this area is unsettled because no other open source license has been interpreted. I'm sorry. Finish your answer. And for those reasons, we think it may very well be appropriate to enunciate a rule that would be appropriate for open source licenses in particular. We're not rule makers, though. We're a court. But getting back to some of the standard legal principles that apply and trying to think of how they apply to open source doctrine, talk about the economic interest. Does it have to be money, or could one say that the economic interest in this case is the interest in having this be freely available, provided that everyone can see and understand how others have made changes to it? I think that the interest is in making the work publicly available because it helps drive the open source development model, which benefits the public. How do you fit what you're trying to argue within some of the classic determinations that say that copyrights protect economic interests and not moral ones? How would you best fit that, fit what you're trying to argue into that rubric? Copyright is meant to protect the author's interest. And, yes, that does relate to economic interest directly. Well, the author's right for attribution is not necessarily considered a condition, so you've got to be talking about something more than just attribution. Yes. In particular, that point, and this is not just merely an attribution case, an open source group could be easily misled if copyright notices are removed, into thinking that this third party who's used the software has independently created it. And the open source group is the one who will enforce the copyright and the license terms. So unless this is considered to be a condition, then the public will be at a disservice. They will not be able to take advantage of the changes that are made to the software. How have you answered Judge Hochberg's question? I'm sorry. The question, at least in part, as I heard it, was copyright cases say the purpose of copyright is to protect the economic interest of authors and creators. And you seem to be agreeing that there's no economic interest here. So what's left other than a moral interest which the case law says is not protected by copyright law? That's an interesting point which I have not thought through together. The interest that is being protected is not necessarily just limited to a moral interest. Talk about the interest. Let's forget the legal terms. However you want to talk about the importance of the interest to be protected so that we can hear what's in your mind about the importance of these interests. I believe you're trying to say something. We're just trying to figure out what it is. The economic interests come into play when using improved software that is being created much more quickly at much less cost. And the economic savings are being able to get that software, Apache and Linux and other software that's used, even in the government and other big entities, at much reduced costs. But whose costs? You're talking about the costs of the world in general. Copyright law seems to be concerned about the economic advantage or disadvantage of she who holds the copyright. It doesn't seem to deal with everybody else's interest. It seems to deal with the creator's interest, the author's, for example. Say what you want to say. I've been thinking this through, and this is my question for you. Is it an economic interest to have an interest in making something freely available for all to share provided that one knows how the executables are changed as they proceed and gets the benefit of it back? Is that the economic interest of the open source group? I have to think about that. OK. I'll tell you what. Let's hear from the other side, and then you can reflect on some of the questions you've been asked and answer them in rebuttal. Thank you very much. Mr. Jerger, good morning to you. Good morning, Your Honors. Please proceed. I'm representing Matthew Kazner and Cam Associates. May it please the Court. What I'd first like to address is the question we started with, which is what is this document? Before you do that, can I address just a question which is not legal. It's just practical. Absolutely. Like why are we here, given that from what I could discern in the briefs, your position is that you removed and you recalled all the infringing products. That's correct, Your Honor. So why haven't you agreed to an injunction if you're not doing anything that would be problematic under the injunction? Well, we— What do you care? If you're not doing it anymore, why are we— Practically, we don't. If you don't, then— Why are you here? It doesn't change anything. We're here because my client has this particular position, and we believe that— You have the right to—I don't want to suggest that you don't have the right to be here. This isn't a legal point. Are you claiming that it's moot? Do we have a mootness argument? The issue at the district court— Is that a yes or a no about mootness? We believe it's moot, but the district court found that— It's capable of repetition? It's capable of repetition. Okay, then that's the answer to the mootness question that you're— Okay. And if you have no plan, I presume you represented to the district court that you don't have a plan for repetition, which brought me to my question I asked before, which is, what is the problem, then, with having an injunction out there that you'll never plan to violate? The problem is my client is a business person, and he would not like to see an adverse court ruling against him or his business, including an injunction. We feel very strongly regarding the legal concepts here in our position. Okay, getting to what you feel strongly about, why did you not opt for—why did your client not opt for subparagraph D, make other arrangements with a copyright holder? When he sees this license, artistic license, and proceeds to download their subparagraphs A, B, C, and D, if he didn't like A, B, or C, why didn't he opt for D and contact the copyright holder and say, can I make other arrangements with you? That gets into the facts of the case and what actually happened. And what happened here is, from our point of view, these files, the software files called the coder definition files, are put on the Internet. My client's position is these aren't foundational works, but they build upon the industry, the model railroad industries, working to create standards for these definitions. What my client did was download the files in an effort to further— You're still not answering my question. Why did he not—what was the reason that he didn't just say, I'm not satisfied with A, B, and C, so I'm going to use D, and contact the copyright holder? Because, first of all, he didn't realize that the original copyright notices were not replicated in his software product because of the particular way the product was downloaded and then replicated. And secondly— So he thought he was complying with C? I don't think it ever crossed his mind. Did he think he was complying with B or C, or what did he think he was under? If he didn't realize the copyright notices weren't being replicated, what did he think he was doing? I believe at the time he thought that this was open source software, free to use, free for anyone to use, and that's how he was using it. So in other words, he never saw A, B, C, and D? I do not know if he saw A, B, and C, and D. But our position is it doesn't matter. Because? Because these are covenants to a contract and not conditions precedent to the formation of a license or any sort of limitation on the scope of the license. So you're basically saying it's a covenant, therefore only damages would be available, she can't prove any damages, so too bad, so sad, is that basically the argument? That is the legal position, yes. That's what I thought. On the injunction, let's assume that there is, under copyright infringement, so there's a presumption of irreparable harm if we determine that we disagree with the point you just made, and this comes under copyright infringement. Is there more to be adjudicated by the district court as to whether or not to grant the preliminary injunction then? Should this case be remanded, is that your question? Right. Well, yes, if this case was remanded, I think the judge would have to make factual findings. The judge found that this license was unlimited in scope and was a non-exclusive license granted to the general public. If this was to be remanded to the district court, the judge would have to make findings as to what limitations here limit the scope of this license. No, no, no. What she's saying is, with respect to the preliminary injunction issues, remand, not sending it back again. The judge has already substantively decided that this license is unlimited and that these are covenants and not conditions. The district judge has decided that issue. We now sit as a court of appeals to consider whether he was right or wrong on that issue. What Judge Prost is asking you on remand is how to deal with the other aspects, if it goes that way, of preliminary injunction. Exactly. Likelihood of success of the merits. Has there been any controversy? Is there any dispute on that question, assuming that we were to conclude that the judge was wrong? Right. Well, assuming this court were to conclude that the judge was wrong, that these are limitations on the scope of the license, and that the acts of my client were beyond the scope of this new limited license, then I think that would be all that you would need. It wouldn't be additional fact findings at that point. But has anybody concluded, I mean, has everyone conceded or stipulated that the acts of your client were outside of this? Were outside of the scope? We agree with the district court judge that this license is unlimited in scope. In other words... So are you basically saying that paragraphs A, B, C, and D are meaningless, unenforceable, there's nothing you can do about them? You can't get damages for breaching them? Well, they're enforceable as covenants to a contract. How do you enforce them? How do you enforce them? If you can't get damages for them and you can't get a preliminary injunction for them, are they meaningless? Well, that's the point of a breach of contract claim. To the extent that this was an exclusive license given for monetary consideration, then there would be damages. This isn't, though. But this isn't, you're correct. It's not monetary consideration. It's other forms of consideration. Correct, but our position is that copyright law is not the correct legal hook here, because these conditions are not conditions precedent to the formation of the contract. I understand your argument. So what your argument is saying, in essence, is these conditions have no way to enforce them. If they're not capable of being quantified in damages terms, so you can't get damages for their breach if they're covenants, and you argue they're not conditions, then they're meaningless, is what you're saying. Well, to the extent that they can prove damages under a breach of contract. I just took damages out of it, because a moment ago I asked you the question, and you said, no, you agree with me, she can't prove damages. Well, if they can't prove damages, then I would agree with you that they... They're meaningless. That's what your position is. Yes. Why should a court lean toward finding something a covenant if it's meaningless as a covenant, whereas if it's interpreted in the face, let's say, of some ambiguity as a condition, it's meaningful. Doesn't the common sense of the situation make the court want to lean toward a meaningful rather than a meaningless interpretation of this text? Your Honor, my client didn't draft the text. Of course he didn't draft it. The text is unambiguous in that none of these conditions are conditions precedent to the formation of the license. Well, that's the issue in the case. Now, you won below on that issue, and you may or may not win here. If we agree with you that they're merely covenants, they're not conditions, they don't limit the scope. Judge White was correct, and obviously you win. But you have to help us, if you can, on the assumption that maybe we won't agree with Judge White. So why should we interpret this text in a way that makes it useless, pointless, doesn't carry out any of the intent of the drafter? Well, I think there's a point to the text, and these conditions are conditions to the modification and the distribution of the software. But if you don't do them, they're meaningless. Nothing happens. Well, you're correct in that it doesn't lead to copyright infringement, and it doesn't lead to monetary damages. Which is where we got to meaningless. That is, you know, when the plaintiff chose to put the software on the internet for free to the general public, that has certain legal ramifications. And one of those ramifications is that when you give away all of your exclusive rights under copyright law, you don't have a claim to copyright. Yeah, but that's the issue in the case, is whether he gave away all his rights. And we have to look to the text to figure that out. We can't get into the brain of your client or the copyright holder here. We have to interpret a legal document, a so-called artistic license. In the very first line, in the preamble, it uses the word condition. You and Judge White say they're not conditions, they're merely covenants. Well, how could the drafter be more clear that he thinks they're conditions? He wants them to be conditions. He calls them conditions in the very first line. And he states in the license, quote, is the intent of this document to state the conditions under which a package may be copied. Correct. And uses provided that language. Yes, the license uses the phraseology of a condition precedent, but these aren't conditions precedent to the formation or granting of the license. In other words… Why not?  We've read the document. They're conditions precedent to distribution or modification. No, it says under which a package may be copied. You copy it, you got these conditions. Is your basic issue that nobody said give me money first? Is that the basic problem that you see? No, the basic problem I see with the artistic license is it doesn't reserve the exclusive rights under copyright, which is the distribution, the modification, and the creation of derivative works. It doesn't say these rights are reserved or that this license… Well, we don't have to get to distribution. Copyright is about copying first and foremost. And then downstream, other things, of course, can happen. But here it's not clear that you had any right to copy it. That is to download it and keep what you download unless you do so in accordance with the copyright owner's stipulations. Well, again, in looking at the case law, which we cite in our brief, there's many instances where a license similar to this is granted and then the licensee goes and distributes the product, modifies the product. For example, in the US Naval Institute's case, prior to the date which the parties agreed that the book Hunt for Red October could be published, also cases that talk about prepayment prior to distribution. I don't see how any of that helps you. We have to interpret this language, not some other language in some other case. And the common sense interpretation of this language is either the scope is limited, for purposes of discussion, or it's a precondition and there's no license at all if you don't meet the precondition. And I don't understand how you have a logic to your position that, no, these aren't conditions, these aren't scope restrictions. It's an unlimited scope with no preconditions or no postconditions or no anything. It's just a giveaway. But when I look at the text here, it doesn't look like it's just a giveaway. It's a giveaway with lots of strings that are articulated in various paragraphs and subparagraphs. Are you complaining that the document wasn't drafted perfectly? Is that what – what would the document have had to say to you so that these were conditions rather than covenants? Well, I think it would have to reserve some sort of element of the exclusive rights of copyright. It would have to say that this license is – we only have the license to use the product if this – for a certain time period, for example, and at the expiration of five years. That that license reverts back to the copyright holders. But maybe they didn't want that condition. I mean you're creating conditions hypothetically, but what if that's – they didn't want it back in five years. To accomplish the goals they wanted, paragraphs A, B, C, and D, what did they have to say to make those conditions under your understanding of this case? Because you're arguing that they're covenants and not conditions. They would have to somehow reserve their exclusive copyright rights, and those rights would have to revert back to the license holder if conditions A, B, or C were not met. Well, if they've never gone out from the copy holder, why do they have to revert back? That just sounds circular to me. Well, our position is when the decoder definition files were put on the internet pursuant to the artistic license, at that point the exclusive rights, the copyright rights were given to the general public, and that's what the judge found. And that's what the Sun Microsystems case says in the Ninth Circuit. When you grant the public a non-exclusive license, you're waiving your right to see them in copyright infringement. I don't think Sun has that problem. You can't put any conditions on that? To the extent that those are covenants that could lead to breach of contract claim, you could. But once that act – No, can you put any conditions on that? No, I don't believe so, unless there's a condition precedent to the formation of a license. If we agreed with the point you made a moment ago, and I think you're trying to argue Sun Microsystems goes way farther than Sun Microsystems goes, but putting that to one side, you would be basically saying it's impossible to have open source code groups. I believe there could be an open source license that was written differently. But they're putting it out for the purpose of a group dynamic, to use plain English. A group work. And that's – how would you ever be able to do that if putting it on the Internet, even when you say these are all my conditions for letting you copy this package, and you're saying sorry you can't do it once you put it on the Internet, how could you ever do open source? Well, I think the license document would need to be drafted differently. So I'm asking you what, and I'm not getting a very good answer. We got an example that if it had a temporal limit, that would be enforceable by injunction as a condition. And then Judge Crow said, well, how about other kinds of conditions, and your answer seemed to be no, nothing but a temporal condition would be permissible. I don't see what basis you have to say that. Well, I think language to the effect, for example, that the versions of the decoder definitions file should be licensed for such use only on, for example, Macintosh machines or Windows machines. That's what some of the other cases say. And at that point, you're not – you're reserving some rights under copyright law. Here, aren't you reserving the right to insist that if, for example, under paragraph C, you're going to rename non-standard executables so they don't conflict with the standard ones, and that you must provide a separate manual page for each non-standard executable? That's an insisting thing you say you've got to do. But that doesn't relate to the exclusive rights under copyright. That's a covenant that could lead to a missing contract. The ultimate issue in this case is what I'm asking. Every time we ask you a question about what rights were reserved, you come around and say, that's a covenant. But that's what we have to decide. It's the ultimate issue in the case. Because there are only – in this particular case, there's only three rights under the Copyright Act that are relevant. It's reproduction, distribution, and the creation of derivative works. And so you can't reproduce this. You can't copy it unless – that's what the artistic license says. It is the intent of this document to state the conditions under which a package may be copied. So you can't copy it unless you pick paragraph A, B, C, or D. What's wrong with that interpretation? Because those are conditions precedent to distribution and modification subsequent to the copyright holder. You can't even copyright it – you can't even copy it, excuse me, unless you have a condition that you meet. Well, I think those – again, I think those conditions are covenants. And if you look at the course of dealing between the parties, that it is clear that when the decoder definition files were put on the Internet, pursuant to this artistic license, at that point, granting a non-exclusive license to the public, those exclusive rights that are relevant under the Copyright Act were waived. And to the extent that any of the terms which are called conditions – no matter whether you use language, maybe not perfect language, but you use language of the – use of the words provided that, and then you say the intent is to state the conditions under which you can copy this, that all of that is rendered nugatory if you put something out on the Internet without charging for it first, saying come and see me, pay me money, and then I'll send it to you. Well, because fundamentally this document has to be construed under contract law because that's what we're dealing with here, a contract. And you have to look to California law, which is something that we didn't discuss a lot in the briefing. And if you look under California law, a condition is an event not certain to occur, which must occur before performance under the contract becomes due. Now, under that definition, these are not conditions. We're talking about copyright law here. That's correct. Okay. All right. I think we have the essence of your case. We'll give Ms. Hall a couple minutes for rebuttal. Thank you, Your Honor. I will address Judge Hochberg's point in a just a moment. I wanted to address a couple of points that he had made. Mr. Katzer's position is that the work has been somehow dedicated to the public or an exclusive right has been transferred. Well, there is no signed document transferring those rights as required under Section 204A. So, therefore, that cannot be. Also, a copyright license must be interpreted or it must be analyzed to determine what uses it is not authorized. And I just wanted to make that point. Getting back to the economic point, it is a difficult thing to describe. Essentially, the way the open source movement was born was that someone had discovered that if open source or even if source is made available so that others can make all these contributions and changes, the development is done much quicker and much better. And this movement was born to make this software available to the public. And you can think of it as they are doing it not for their own personal fulfillment or what have you. They're doing it for an intended third-party beneficiary, the public. And it's done for free, free of charge. They donate their labors to this. In some respects, it is done to save the public the additional time and trouble and money to create that software. And that would be the economic basis for it. It isn't your traditional economic basis, but that is the best that I can describe. Maybe the answer is Congress needs to amend the copyright law for people like you. But unless and until they do it, we have to apply the copyright law the way it is. The copyright law as it is would still protect open source groups. Well, it's not necessarily so clear if the economic interest of the copyright holder is the key. Because you're admitting that the copyright holder himself doesn't have any economic interest. He has a sort of philosophical interest that he wants it all to be out there for everybody to work with. He is granting an economic interest to an intended third-party beneficiary, the public. It is not your traditional economic model, no. But it is an economic model in that sense. Well, what you're basically saying is his economic interest is in free pricing. It's not in high pricing. It's in free pricing. It's in free pricing and making improved software available at lower cost and much quicker. All right. We'll take the case under advisement. We thank both counsels. Thank you, Your Honor.